Daniel LESOEUR, Ilona Lesoeur, Thomas Lesoeur, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 90 CV 1216–PHX–RGS.

United States District Court, D. Arizona.

Oct. 13, 1992.

John Friedman, Alan M. Kyman, for plaintiffs.

James P. Loss, Julie Zatz, for defendant.

## ORDER

STRAND, District Judge.

**BACKGROUND:**

This action arises out of injuries that Plaintiff Daniel suffered in a rafting accident on the Colorado River (the "River") in the Grand Canyon National Park ("the Park"). While visiting the Park, Plaintiffs consulted the local "yellow pages" in the telephone book to arrange a rafting trip with one of the various river tour companies and scheduled a rafting trip for the following day through the Hualapai Indian Tribe.

During the river excursion, Plaintiff Daniel LeSoeur fell from the raft when it made an abrupt turn in smooth water to motor upstream. Plaintiff was injured when struck by the raft's propeller. The accident occurred on the River at Mile 234, below Diamond Creek.

It is not disputed that the Hualapai Indian Tribe owns and operates its river tour, and all the company's employees are members of the tribe. The river trips conducted by the tribe are not regulated by the United States government.

Plaintiffs initially filed an administrative claim with Grand Canyon National Park. That claim was denied. Plaintiffs then filed this action against the United States under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiffs contend that in failing to regulate the Hualapai rafting tours the government breached its legislative and regulatory duties to provide and enforce mandated safety standards on the Colorado River. Alternatively, Plaintiffs contend the government had an affirmative duty to warn tourists that the Hualapai Tribe is the only unregulated river touring company.

Two motions are before the Court. On September 25, 1991, Defendant filed a motion to dismiss for lack of subject matter jurisdiction because Plaintiffs' claims fall within an exception to the FTCA's limited waiver of sovereign immunity. 28 U.S.C. § 2680(a). Defendant's motion will be treated as one for summary judgment as matters outside the pleadings have been submitted and considered by the Court.

On October 24, 1991, Plaintiffs filed a cross-motion for summary judgment, claiming that Defendant's conduct does not fall within the discretionary function exception to the FTCA. Plaintiffs contend Defendant had a duty to regulate the Hualapai's activities or, alternatively, Defendant had a duty to warn visitors to the Park that the Hualapai operations were unregulated. Plaintiff claims that Defendant was negligent in doing neither.

**DEFENDANT'S MOTION TO DISMISS TREATED AS A MOTION FOR SUMMARY JUDGMENT:**

Defendant argues in its motion to dismiss for lack of subject matter jurisdiction that

Plaintiffs' claims are barred by the discretionary function exception to the FTCA. Specifically, Defendant contends that the United States Secretary of Interior properly determined, pursuant to Department of Interior enabling legislation, that the government would not regulate the Hualapai Indian Tribe's river activities below Diamond Creek, Mile 226, because of policy considerations as to tribal sovereignty and self-determination relative to tribal business activities, as well as longstanding disputes with several tribes over ownership of the Colorado River riverbed below Diamond Creek.[1] Because Plaintiff was injured at Mile 234, below Diamond Creek, Defendant seeks dismissal as a matter of law.

**The Discretionary Function Exception to the FTCA:**

The FTCA[2] "is a limited waiver of sovereign immunity making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). This waiver of sovereign immunity is limited by the exceptions set forth in 28 U.S.C. § 2680. If a case falls within any of these exceptions, the court lacks subject matter jurisdiction and the case must be dismissed. *See Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976; *United States v. Gaubert,* 499 U.S. 315, 323–26, 111 S.Ct. 1267, 1274–75, 113 L.Ed.2d 335 (1991).

The "discretionary function exception" is set forth in 28 U.S.C. § 2680(a). This section provides that the waiver of sovereign immunity under the FTCA, 28 U.S.C. § 2674, and the jurisdictional grant to the district courts in 28 U.S.C. § 1346(b) does not apply to:

> (a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (1990).

■ Thus, the dispositive issue in this case is whether Plaintiffs' claims are "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty" on the part of the National Park Service ("the Park Service"). *Id.* The determination of whether a particular activity is a discretionary function is a question of law. *Garcia v. United States,* 826 F.2d 806, 809 (9th Cir.1987).

**Judicial Interpretation of the Discretionary Function Exception:**

The United States Supreme Court first addressed the discretionary function exception to the FTCA in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The Court discussed the legislative history of the FTCA, observing that "it was not contemplated that the Government should be subject to liability arising from acts of a governmental nature or function ..." *Id.* at 28, 73 S.Ct. at 964. In addressing the discretionary function exception, the Court stated that discretion exists when there is "room for policy judgment and decision." *Id.* at 36, 73 S.Ct. at 968.

The Supreme Court later reiterated the *Dalehite* interpretation of the discretionary function exception. *See United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In *Varig* the Court stated that "Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Id.* at 815, 104 S.Ct. at 2765.

*Gaubert,* 499 U.S. at 323–26, 111 S.Ct. at 1274–75, then provided that when established governmental policy as expressed by statute, regulation, or agency guidelines allows a gov-

---

**1.** Among those claiming to "own" that portion of the Colorado riverbed are the United States of America, the Navajo Nation, the Hualapai Nation, and the Hopi Nation.

**2.** 28 U.S.C. § 2674 provides in relevant part that the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.

ernment agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. The trial court is to focus on whether the agent's discretionary actions are susceptible to policy analysis. *Id.* at 323, 111 S.Ct. at 1273–74.

The Ninth Circuit, relying on *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), developed a two-step framework in which to analyze whether an action falls within the discretionary function exception. *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1025 (9th Cir.1989). The *Kennewick* Court stated:

> We must "first consider whether the action is a matter of choice for the acting employee.... [T]he discretionary function will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz,* [486 U.S. at 1958] 108 S.Ct. at 1958. If the challenged conduct does involve an element of judgment, our second step is to "determine whether that judgment is of the kind that the discretionary function exception was intended to shield." *Id.* [486 U.S. at 1959, 108 S.Ct.] at 1959. To be shielded, the judgment must be " 'grounded in social, economic, and political policy.' " *Id.*

*Id.* See also *Summers v. United States,* 905 F.2d 1212, 1214 (9th Cir.1990).

It is with this framework in mind that this Court must determine whether the discretionary function exception to the FTCA applies to the instant dispute.

**Defendant's Duties Under Federal Statute, Regulation, or Policy:**

■ Plaintiffs argue that Defendant violated its statutory duties and, therefore, the discretionary function exception is not applicable under the first step of *Kennewick. Kennewick,* 880 F.2d at 1025. Specifically, Plaintiffs argue that by not regulating the Hualapai's operations, the United States ignored 36 C.F.R. § 5.3, which in 1988 provided:

> Engaging in or soliciting any business in park areas, except in accordance with the provisions of a permit, contract, or other written agreement with the United States, except as such may be specifically authorized under special regulations applicable to a park area, is prohibited.

36 C.F.R. § 5.3 (1988).

Defendant contends that this regulation does not mandate the Park Service to regulate the Hualapai's river operations. Rather, Title 16 gives the Secretary of the Interior ("the Secretary") and the Park Service broad-ranging authority and discretion to determine how to manage the national parks. Specifically, 16 U.S.C. § 1 states that the Park Service, which is created within the Department of the Interior, shall promote and regulate the use of national parks by such means and measures to conserve the parks and promote their enjoyment. 16 U.S.C. § 1 (1991). The statutory scheme later provides that the Secretary shall make and publish rules and regulations "as he may deem necessary and proper for the use and management" of the national parks. *Id.* at § 3. Even more specifically, the statute provides that the Secretary promulgate and enforce regulations concerning "boating and other activities under such terms and conditions as he may deem advisable." *Id.* at § 1a–2(h).

Defendant points out that courts have found the Secretary to have authority to decide the overall scheme of regulation within national parks and to delegate "administrative discretion" to the Park Service. *See, e.g., Wilderness Public Rights Fund v. Kleppe,* 608 F.2d 1250, 1253 (9th Cir.1979). Defendant also asserts that its decision to not regulate the Hualapai's river tours is consistent with the federal policy of diminished regulation of Indian tribal activities as that policy is expressed in the Indian Self–Determination Act, 25 U.S.C. § 450 (1983 & Supp.1990).

Based on the presentations of the parties, the Court finds that there exists no basis in law to conclude that the Park Service violated its statutory duties by not regulating the Hualapai's river operations. It appears the Park Service interpreted applicable statutes and regulations and chose not to regulate the Hualapai river tours. 36 C.F.R. § 7.4 provides detailed regulations concerning Colora-

do River boat trips, and those regulations were made applicable only to waters upstream of Diamond Creek, Mile 226, that is, upstream from the point below which the Hualapai reservation begins and the tribe offers it rafting tours. 36 C.F.R. § 7.4 (1988).

Plaintiffs also assert that Defendant violated Law Enforcement Guideline NPS–9, which directs the Park Service to enforce all applicable laws and regulations. However, this argument fails given this Court's prior conclusion, because 36 C.F.R. § 5.3 does not require the Park Service to regulate the Hualapai's operations.

Therefore, given the provisions of Title 16, Defendant's decision not to regulate the Hualapai's river tours involved an appropriate exercise of discretionary judgment based on public policy. On the facts and authority presented, the Court concludes that Defendant did not fail to adhere to any duty prescribed by federal statute, regulation, or policy.

### Defendant's Duty to Warn:

■ The Court must next determine whether Defendant's judgment is the kind that the discretionary function is intended to shield. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958–59; *Kennewick*, 880 F.2d at 1025. To be shielded, the exercise of judgment must be grounded in social, economic, or political policy. *Id.* The focus of the inquiry is whether the actions taken are susceptible to policy analysis. *Gaubert*, 499 U.S. at 323–26, 111 S.Ct. at 1274–75.

■ Plaintiffs contend, alternatively, that because Defendant failed to regulate the Hualapai's river operations, Defendant had an affirmative duty to warn visitors to the Park that the Hualapai's operations were, in fact, unregulated. Plaintiff contends, moreover, that Defendant's failure to do so is not shielded by the discretionary function exception. Instead, under the second prong of *Kennewick*, 880 F.2d at 1025, this failure to warn is a departure from safety considerations rather than an exercise of judgment in a matter involving political, economic or social factors. *See Summers v. United States,* 905 F.2d 1212; *Seyler v. United States,* 832

F.2d 120 (9th Cir.1987); *ARA Leisure Services v. United States,* 831 F.2d 193 (9th Cir.1987).

Defendant responds that not warning Park visitors is susceptible to the same public policy analysis as the decision not to regulate the Hualapai. That is, the Park did not warn visitors that the Hualapai river operations were unregulated because to do so would exacerbate the dispute concerning the ownership of the Colorado riverbed, as well as relations with the Hualapai Indian Tribe as a sovereign nation. Therefore, Defendant contends its decision was an exercise of judgment based on political factors involving the Hualapai Tribe, and the discretionary function exception applies. *See Gaubert*, 499 U.S. at 325–26, 111 S.Ct. at 1275; *Kennewick*, 880 F.2d at 1028.

The question of whether a decision not to warn is shielded by the discretionary function exception is resolved under the second step of *Kennewick*, 880 F.2d at 1028; *Summers*, 905 F.2d at 1215. The issue is whether the decision not to warn reflects the exercise of judgment grounded in political, social, or economic policy. *Id.*

■ Plaintiffs correctly point out that case law holds that the government owes a duty to warn in certain defined circumstances. *See e.g. Summers*, 905 F.2d at 1216 (failing to warn of hidden hot coals at a national recreation area resembled more a departure from safety considerations, rather than a mistaken judgment in a matter concerning political, social, or economic policy). However, Defendant articulated its analysis and decision that to warn the public that the Hualapais operated the only unregulated river tour might adversely affect either the boundary dispute as to ownership of the Colorado River or relations with the Hualapai or both. Such analysis and decision by Defendant meets the test of being "susceptible to policy analysis" and accordingly falls within the ambit of the discretionary function exception. *Gaubert*, 499 U.S. at 323–26, 111 S.Ct. at 1274–75. Further, case law is clear that Defendant need not prove it weighed relevant factors and made a conscious decision not to warn. *Kennewick*, 880 F.2d at 1028.

Given the Park Service's assessment of its relations with the Hualapai Indian Tribe and applicable case law, this Court finds that Defendant's decision falls within the discretionary function exception. The Park Service had no affirmative duty under the second step of *Kennewick* to so warn Park visitors.

### CONCLUSION:

The Court concludes that the discretionary function exception to the FTCA applies, and it is appropriate to grant Defendant's motion to dismiss. *Orleans*, 425 U.S. at 814, 96 S.Ct. at 1976. Thus, this Court need not consider Plaintiffs' cross-motion for partial summary judgment.

Accordingly,

IT IS ORDERED granting Defendant's motion to dismiss for lack of subject matter jurisdiction.

FURTHER ORDERED directing the Clerk of the Court to enter judgment in accordance with this Order.