**Keith WILSON, as Conservator for Crystal Wilson, a minor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 95–1288–FR.**

United States District Court, D. Oregon.

Oct. 1, 1996.

Keith E. Tichenor, Robert Pardington, Pozzi Wilson Atchison, Portland, OR, for Plaintiff.

Kristine Olson, United States Attorney, Herbert C. Sundby, Assistant United States Attorney, Portland, OR, for Defendant.

## OPINION

FRYE, District Judge:

The plaintiff, Keith Wilson, filed this action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.*, as conservator of the estate of his daughter, Crystal Wilson, who was injured at South Twin Lake located in the Deschutes National Forest. Before the court is the defendant's motion for summary judgment (# 15).

### UNDISPUTED FACTS

South Twin Lake is a natural lake located in the Bend Ranger District of the Deschutes National Forest in Deschutes County, Oregon. The area around South Twin Lake is managed by the United States Forest Service. A reservoir located behind the nearby Wickiup Dam was filled in 1946, thereby permanently increasing the water level in South Twin Lake. The increased water level in South Twin Lake caused many trees to become partially submerged and to die. Some of the dead trees have fallen over. The water level in South Twin Lake fluctuates by as much as six feet during the year. The result of these two conditions—the increased water level in the lake and the partially submerged trees—is that South Twin Lake contains many stumps and much wood debris, which are at times visible above the surface of the water and at other times partially submerged.

The Forest Service has developed South Twin Lake as a site for intensive recreation. There is a day-use area next to the lake which has picnic tables and toilets. While the Forest Service has never designated South Twin Lake as a swimming area, it does not prohibit swimming. The Forest Service is aware that people swim in South Twin Lake. No fee is charged for the use of the day-use area next to South Twin Lake.

On June 20, 1992, the Keith Wilson family, which includes a daughter, Crystal Wilson,

went to South Twin Lake for the day. Upon arriving at the lake, Mrs. Wilson set up fishing poles near the edge of the lake, while Mr. Wilson parked their car. Crystal, who was almost five years old, and her older brother played in the water. Crystal climbed onto a large, flat tree stump sticking out of the water by several inches. She jumped from the stump into the water, landing on a piece of wood pointing upward with the tip of the wood just below the surface of the water. Crystal was seriously injured.

In November of 1992, the Forest Service improved the South Twin Lake recreational area by grinding out some of the stumps in the campground located adjacent to the day-use area and by pulling up some of the stumps on the beach. The Forest Service decided not to remove any of the stumps or debris from South Twin Lake because it did not want to disrupt the habitat of the life forms which lived in the lake. Furthermore, the Forest Service could not determine how to remove a part of the submerged debris without removing all of it, which the Forest Service was not prepared to do. Because of these concerns, the Forest Service did not remove any debris from the water.

### CONTENTIONS OF THE PARTIES

The United States contends that it is immune from liability for two reasons: (1) the South Twin Lake recreational area is subject to the Public Recreational Use of Private Lands Act of the State of Oregon (Oregon's Recreational Use Act), O.R.S. 105.655 et seq., which protects a landowner from liability for allowing the public on its land for recreational purposes; and (2) management by the Forest Service of the South Twin Lake recreational area is discretionary with the Forest Service and falls within the discretionary function exception to the FTCA.

Wilson contends that Oregon's Recreational Use Act does not apply to the South Twin Lake recreational area because the area is susceptible to adequate policing and correction of dangerous conditions by the Forest

Service. Wilson contends that the discretionary function exception to the FTCA does not include operational decisions, and therefore does not include management by the Forest Service of this area.

### LEGAL STANDARDS

 Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

### ANALYSIS AND RULING

1. *Recreational Use Act*

The United States contends that as landowner of the South Twin Lake recreational area, it is immune from liability under Oregon's Recreational Use Act[1] for the injuries suffered by Crystal Wilson at South Twin Lake. Oregon's Recreational Use Act provides:

Except as otherwise provided in ORS 105.675:

(1) An owner of land owes no duty of care to keep the land safe for entry or use by others for any recreational purpose or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering thereon for any such purpose.

(2) An owner of land who either directly or indirectly invites or permits any person

1. The 1995 Oregon legislature repealed Oregon's Recreational Use Act and replaced it with a law which affords landowners greater immunity. Neither party contends that the current version

of the law should be given retroactive effect. The portions of Oregon's Recreational Use Act quoted in this opinion are from the Act applicable in 1992.

to use the land for any recreational purpose without charge does not thereby:

 (a) Extend any assurance that the land is safe for any purpose;

 (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

 (c) Assume responsibility for or incur liability for any injury, death or loss to any person or property caused by an act or omission of that person.

O.R.S. 105.665.

Oregon's Recreational Use Act applies to land defined as follows:

 "Land" means agricultural land, rangeland, forestland, and lands adjacent or contiguous to any bodies of water, watercourses or the ocean shore as defined by ORS 390.605, including roads, bodies of water, watercourses, private ways, private buildings and structures on such lands and machinery or equipment on the land when attached to the realty, but shall not include lands described in ORS 390.605 to 390.770 [ocean shores and state recreation areas]. "Land" also includes abandoned borrow pits, gravel or rock quarries not currently being used for commercial or industrial purposes, whether or not such pits or quarries are situated on agricultural land, rangeland, forestland or lands adjacent or contiguous to the ocean shore as defined in ORS 390.605.

O.R.S. 105.655(2).

■ Under Oregon's Recreational Use Act, a landowner is not immune from liability for the willful, wanton and reckless failure to guard or warn against certain known dangers, or if the landowner charges the users of the recreational area a fee. O.R.S. 105.675. Wilson does not contend that either exception applies here.

■ The United States Court of Appeals for the Ninth Circuit has applied state recreational use statutes to federally owned lands. *See O'Neal v. United States,* 814 F.2d 1285, 1287 (9th Cir.1987) (applying Oregon's Recreational Use Act to a logging road located on land controlled by the Bureau of Land Management). Oregon's Recreational Use Act defines "land" covered by its protections to include forestland and bodies of water, and any land adjacent to or contiguous to any body of water. The South Twin Lake recreational area, located in the Deschutes National Forest, falls within this definition.

■ Wilson contends, however, that *Tijerina v. Cornelius Christian Church,* 273 Or. 58, 539 P.2d 634 (1975), dictates an exception to the statutory definition of "land." In *Tijerina,* the court stated as follows: "The legislative history of ORS 105.655–105.680 leaves no doubt that the legislature intended by the restrictive definition of land in ORS 105.655(2) to limit its application to landholdings which tended to have recreational value but not be susceptible to adequate policing or correction of dangerous conditions." *Id.* at 64, 539 P.2d 634. Wilson contends that there is at least a genuine issue of material fact as to whether the South Twin Lake recreational area was a landholding not susceptible to adequate policing or correction of dangerous conditions.

The *Tijerina* court made the statement quoted above before concluding that a field which had not been commercially farmed for three years was not agricultural land. *Id.* at 64–65, 539 P.2d 634. The *Tijerina* court did not rely on evidence of susceptibility to policing or correction of dangers in making that determination. The quoted comment is dicta and is contrary to the plain words of the statute. Furthermore, well after *Tijerina* was decided, the Oregon Supreme Court applied Oregon's Recreational Use Act to parks which appear to be as susceptible to policing or correction of dangers as the South Twin Lake recreational area. *See Van Gordon v. PGE Co.,* 294 Or. 761, 662 P.2d 714 (1983) (privately owned park open to the public with toilets, picnic tables, fire pits, garbage and parking). Accordingly, the court concludes that Oregon's Recreational Use Act applies to the South Twin Lake recreational area and grants immunity from liability to the United States.

### 2. *Federal Tort Claims Act*

As an alternate theory, the United States contends that it is immune from liability under the discretionary function exception to

the FTCA for torts caused by its maintenance of the South Twin Lake recreational area.

■ The FTCA is a limited waiver of sovereign immunity. No liability attaches under the FTCA unless expressly authorized by Congress. *United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976). The discretionary function exception established by 28 U.S.C. § 2680(a) preserves the sovereign immunity of the United States with respect to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

■ Wilson contends that operational decisions, as opposed to policy decisions, do not fall within the discretionary function exception to the FTCA. Wilson claims that decisions by the United States concerning the South Twin Lake recreational area are operational decisions and, thus, are not immune from tort liability under the FTCA.

■ The United States Supreme Court rejected this argument in *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), in which it held that the discretionary function exception to the FTCA applied to day-to-day operational decisions made by federal regulators when supervising a savings and loan institution:

> A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*Id.* at 325, 111 S.Ct. at 1275.

In *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir.1989), the court stated the test for applying the discretionary function exception to the FTCA:

*Berkovitz* [*v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)] directs us to apply a two-step test for determining whether the discretionary function exception applies. We must "first consider whether the action is a matter of choice for the acting employee.... [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." If the challenged conduct does involve an element of judgment, our second step is to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." To be shielded, the judgment must be "grounded in social, economic, and political policy."

*Id.* at 1025 (citations and quotations omitted).

Neither party has cited a federal statute, regulation or policy mandating the Forest Service to clear all submerged woody debris from South Twin Lake. Although Forest Service Manual 2300 for Recreation, Wilderness and Related Resource Management does state that swimming sites should be developed only where it is possible to mitigate hazardous conditions, including submerged stumps and snags, the Forest Service never designated this area as a swimming site. Furthermore, there is no regulation requiring it to designate the area as a swimming site, even though it knew that some swimming took place at South Twin Lake. Thus, the first prong of the test is met.

The second prong of the test requires a determination of whether the judgment of the Forest Service was grounded in social, economic and political policy. The Forest Service had the discretion to clear submerged debris from South Twin Lake. This judgment exercised by the Forest Service is grounded in social, economic and political policy. To clear submerged debris from South Twin Lake would have required the Forest Service to reallocate some of its economic resources from another project to South Twin Lake. In addition, activity of this type in a national forest raises environmental concerns and concerns about the dis-

turbance of the natural state of South Twin Lake.

Wilson cites *Summers v. United States,* 905 F.2d 1212 (9th Cir.1990), in which the National Park Service did not erect signs to warn of danger from hot coals in fire rings in Golden Gate National Recreation Area, in spite of a policy regarding signs. The court held that this decision was more of a departure from safety considerations in established park policies than poor judgment in a matter involving choices among political, economic and social factors. *Id.* at 1216.

*Summers* differs from the South Twin Lake situation before this court. The South Twin Lake situation is similar to ones in which park rangers have used their discretion to balance the need of the public for access against the need of the Forest Service to preserve public safety while remaining within the constraints of available monetary resources. In these cases, courts have applied the discretionary function exception. *See Valdez v. United States,* 56 F.3d 1177 (9th Cir.1995) (failure to warn of danger posed by waterfall near park trail); *Childers v. United States,* 40 F.3d 973 (9th Cir.1994), *as amended* Jan. 17, 1995, *cert. denied,* — U.S. ——, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995) (failure to close trail or warn of danger on Yellowstone trail which was not maintained during the winter). Accordingly, this court finds that the discretionary function exception to the FTCA applies, and the United States is immune from liability.

## CONCLUSION

The defendant's motion for summary judgment (# 15) is granted.