signment, humiliation or discrimination directed at that person.

\* \* \* \* \* \*

This exclusion applies ... [w]hether the insured may be liable as an employer or in any other capacity...

Other courts reviewing substantially similar exclusions have concluded that the exclusion "broadly covers virtually any claim arising out of the employment relationship between" the insured and its employee. *See, e.g., Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.,* 2 F.3d 105, 109 (5th Cir.1993)(insurer had no duty to defend employer against tort claims brought by former employees); *International Brotherhood of Elec. Workers Local 1357 v. American Int'l Adjustment Co., Inc.,* 955 F.Supp. 1218 (D.Haw.1997) (same), *aff'd,* 142 F.3d 443, 1998 WL 230895 (9th Cir.1998). Defendants' contention that the exclusion does not apply because their alleged wrongful acts occurred after Delaney's separation from employment is unavailing because the incidents of which she complains flow directly from the employment relationship.

 Delaney's claims against defendants fall outside the CGL coverage for additional reasons: Coverage A, applicable to "bodily injury," requires an "occurrence," which is defined as "an accident." Delaney accuses defendants of intentional, not accidental, conduct. Similarly, the relevant provisions of Coverage B, applicable to "personal and advertising injury," expressly exclude coverage for personal injury (1) caused by the insured with knowledge that the act would violate the rights of another; (2) arising out of oral or written publication of material with knowledge of its falsity; (3) arising out of a criminal act committed by the insured; and (4) arising out of breach of contract. The plaintiff's claims of false arrest/imprisonment, wrongful termination, defamation, and unjust enrichment are all subject to these exclusions.

The Court concludes that plaintiff Capitol Indemnity Corporation has no duty under the Commercial General Liability policy to defend defendants 1405 Associates, Inc. and Ranbir Bajwa in the state court action brought by Regina Delaney. Accordingly,

**IT IS HEREBY ORDERED** that the motion of plaintiff Capitol Indemnity Corporation for summary judgment [Doc. # 14] is **granted.**

A separate judgment in accordance with this memorandum and order is entered this same date.

### *JUDGMENT*

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment is entered in favor of plaintiff Capitol Indemnity Corporation and against defendants 1405 Associates, Inc., and Ranbir Bajwa. The defendants shall bear the costs.

**Jillian RELYEA, a minor, through her parent guardian, Elaine RELYEA, a single woman; William Relyea, a single man, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.00–2448 PHX VAM.**

United States District Court, D. Arizona.

May 13, 2002.

Charles J. Surrano, III, John Neal Wilborn, Surrano Law Offices, Phoenix, AZ, for plaintiffs.

John Robert Mayfield, U.S. Attorney's Office, Phoenix, AZ, for defendant.

## ORDER

MATHIS, United States Magistrate Judge.

This Federal Tort Claim Act case arises out of a car accident which occurred in the Prescott National Forest, Forest Service Road No. 104, on June 5, 1998. The Court has jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and 28 U.S.C. § 1346(b). (Doc. 1). Defendant was served and answered. (Doc. 7). Both parties consented to disposition of the case by a Magistrate Judge. (Docs.4, 5, 6). On January 31, 2002, defendant filed a Motion for Summary Judgment arguing that Arizona's Recreational Use Statute bars recovery by plaintiffs. (Docs.28, 29). Plaintiffs filed a Cross Motion for Summary Judgment asking that the Court find the Arizona Recreational Use Statute, A.R.S. § 33–1551, is not applicable. (Docs.34, 35). The Motions are fully briefed and the Court heard oral argument on April 22, 2002.

### A. Summary Judgment Standard

Summary judgment is appropriate when the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P.; *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating that there is no material fact precluding summary judgment. *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Substantive law determines which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). "Only disputes over facts that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial". *Id.* at 322, 106 S.Ct. 2548; *see also Citadel Holding Corporation v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), F.R.Civ.P.; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. If the evidence is merely colorable or if not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. However, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

*B. Federal Tort Claim Act Liability*

The liability of the United States under the Federal Tort Claims Act is set forth in 28 U.S.C. § 2674. This statute waives sovereign immunity and makes the United States liable respecting tort claims "... in the same manner and to the same extent as a private individual under like circumstances ..." The United States is liable for personal injuries caused by the negligent or wrongful acts or omissions of employees of the United States, acting within the scope of their employment, "... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 3146(b)(1). These statutes entitle the United States to assert defenses that would be available to an individual under state law. Therefore, state recreational use statutes are applicable in the context of the Federal Tort Claim Act. *Proud v. United States,* 723 F.2d 705 (9th Cir.1984), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *O'Neal v. United States,* 814 F.2d 1285, 1287 (9th Cir.1987).

Arizona's Recreational Use Statute is set forth at A.R.S. § 33–1551. This statute provides:

A public or private owner, easement holder, lessee or occupant of premises is not liable to a recreational or educational user except upon a showing that the owner, easement holder, lessee or occupant was guilty of willful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational or educational user.

The statute defines "premises" as forest land, "... any other similar lands, wherever located, which are available to a recreational or educational user, including, but not limited to, ... road, trail or structure on such lands." A.R.S. § 33–1551C3. A "recreational user" is defined as: "... a person to whom permission has been granted or implied without the payment of an admission fee or any other consider-

ation to travel across or to enter upon premises to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits ..." A.R.S. § 33–1551C4.

Defendant argues that because plaintiff, Jillian Relyea, was a "recreational user" plaintiffs would have to prove that the United States was guilty of " ... willful, malicious or grossly negligent conduct which was the direct cause of the injury to the recreational or educational user." A.R.S. § 33–1551(a). Defendant further argues that because plaintiffs cannot show such willful, malicious or grossly negligent conduct it is entitled to judgment as a matter of law. Plaintiffs argue that Jillian Relyea, the injured minor, was not a recreational user within the meaning of this statute. However, plaintiffs concede that they have not alleged and cannot prove that the defendant acted willfully, maliciously or was grossly negligent and, if the Recreational Use Statute applies, defendant is entitled to judgment. (Doc. 34 at p. 4). The Cross Motions for Summary Judgment turn on one issue alone, i.e. whether Jillian Relyea was a recreational user within the meaning of A.R.S. § 33–1551.

### C. Undisputed Facts

The following facts are undisputed (Docs.29, 35):

1. At approximately 11:15 p.m. on June 5, 1998, Jillian Relyea was injured in a single car accident occurring on Forest Service Road No. 104, within the Prescott National Forest, Yavapai County, Arizona.

2. Forest Service Road No. 104 is part of the Forest Service Transportation System and is maintained by the Forest Service and opened to the public for use.

3. Forest Service Road No. 104 is the access road to the Mingus Mountain Campground within the Prescott National Forest. The Mingus Mountain Campground is accessed from State Route 89A to Forest Service Road No. 104. The Campground is located approximately four miles off State Highway 89A on Forest Service Road No. 104.

4. On Friday, June 5, 1998, plaintiffs Elaine and William Relyea, with their three children (including Jillian), left their Phoenix residence and drove to the Mingus Mountain Campground. The Relyeas were at the campsite for no more than one hour. This is because while unhitching the family trailer, a utility drain pipe broke necessitating a replacement pipe. The family left the campsite and drove to Prescott Valley.

5. Plaintiffs dropped off Jillian and her two siblings at their cousins' house in Prescott Valley. The Relyea family planned to attend a graduation ceremony for one of the cousins' later that day. The three children remained at their cousins' house in Prescott Valley, attended their cousin's graduation ceremony and a graduation party. The Relyea parents also attended the graduation and party.

6. Jillian's cousin had earlier invited her to spend the weekend with her. While at the graduation party, it was agreed that Jillian would remain with her cousins over the weekend in Prescott Valley. However, she needed some personal belongings (clothes and toiletries) she left in the trailer at the campsite.

7. The Relyea parents drove back to the campsite with the understanding that Jillian would appear later and retrieve her personal items.

8. Jillian Relyea (then 15 years old), with her cousin, Teresa Cheromiah (then 16 years old), and a friend, drove to the campsite, retrieved Jillian's personal items and left the campground. While traveling back to the state highway on Forest Service Road No. 104, Teresa Cheromiah was driving and Jillian was a front seat passen-

ger. As they were traveling downhill on Forest Service Road No. 104, Teresa lost control of the car, which left the dirt road, crashed and caused Jillian's injuries which are the subject of this lawsuit.

9. The Relyea family did not pay a fee for use of the Mingus Mountain Campground.

### D. Legal Analysis

In construing A.R.S. § 33–1551, the Court must construe the statute strictly and in accordance with the legislative intent. *Herman v. City of Tucson,* 197 Ariz. 430, 433–4, 4 P.3d 973, 976–7 (1999). As set forth in *Herman,* "the legislative history of Arizona's Recreational Use Statute indicates that the Act was designed to encourage landowners to open certain lands to recreational users by limiting liability for injuries to those users." *Herman,* 197 Ariz. at 434, 4 P.3d at 977. In *Herman,* the Arizona Court of Appeals found the Recreational Use Statute to mean exactly what it says. That is, one is not a recreational user if he or she does not enter or use the park for one of the activities specified in the statute or for a similar type of recreational activity reasonably covered by the statute. *Herman,* 197 Ariz. at 435, 4 P.3d at 978.

In *Herman v. City of Tucson,* the plaintiff went to a local park for the purpose of working at a concession. The local park was the scene of a fundraising music festival (Jamaicafest). A radio station was sponsoring the event and rented space to vendors for the day. Plaintiff was an employee of one of the vendors. While walking to her place of work, she stepped in a gopher hole and fell. She sued the City of Tucson and they claimed she was a recreational user within the meaning of A.R.S. § 33–1551. The Arizona Court of Appeals found that Jamaicafest was not a recreational use and that the plaintiff, who entered the park solely to work at the event,

was not a recreational user. In reaching this conclusion, the Arizona Court pointed out that "the presence of Jamaicafest and Michele at Reed Park on the accident date clearly was not 'to hunt, fish, trap, camp, hike, ride, exercise, or swim.' "

Plaintiffs contend that because Jillian was not on Forest Service property on the night of the accident to "camp," she was not a recreational user. It is uncontested that plaintiff was at the camp earlier on June 5, 1998 with her family when the camp was set up. It is also uncontested that when she returned to the camp on the evening of June 5, 1998, it was for the purpose of obtaining her clothing and toiletries from the camp and then returning to her cousins' house in Prescott Valley. After leaving the camp to return to her cousins' home, the accident occurred on Forest Service Road No. 104.

Plaintiff argues that under the holding in *Herman* one must look at the subjective intent of the plaintiff. In fact, the Arizona Court specified that the entrant's subjective intent was not a controlling factor in determining whether the plaintiff was a recreational user. *Id.*

The Government argues that *Herman* does not control and that the language stating that to be a recreational user one must enter or use the park for the activities set forth in § 33–1551(c)(4) is dicta. Instead, defendant argues it is the Forest Service's intent that governs and once they bring themselves within the statute (by opening their property for recreational use without a fee), the plaintiffs' subjective intent is irrelevant. *See Howard v. United States,* 181 F.3d 1064, 1072–73 (9th Cir.1999) discussing Hawaii's Recreational Use Statute and holding that landowner's intent governs.

Plaintiffs' subjective intent is not the determining factor in deciding whether someone is a recreational user. *Herman*

*v. City of Tucson,* 197 Ariz. at 435, 4 P.3d at 978. Instead, *Herman* cites *Linville v. City of Janesville,* 184 Wis.2d 705, 516 N.W.2d 427, 431 (1994) for the proposition that the "court should give primary consideration to the nature and purpose of the activity without being controlled by the property user's subjective intent." *Id.* In *Linville v. City of Janesville,* 184 Wis.2d 705, 516 N.W.2d 427 (1994), the Court set forth the test for determining whether one is a recreational user under Wisconsin's statute. The test articulated requires consideration of the purpose and nature of the activity in addition to the user's intent. *Linville,* 184 Wis.2d at 716, 516 N.W.2d 427. The issue in *Linville* was similar to the issue before this Court because the *Linville* plaintiff was injured while scouting a fishing area in preparation for the actual fishing which was to take place the following day. The *Linville* Court found this activity to be preparatory to an activity listed in the Recreational Use Statute (fishing) and, therefore, plaintiff was a recreational user.

A search of Arizona case law construing the Arizona Recreational Use Statute does not reveal any case similar to the circumstances and arguments raised in this matter. For example, in *Smith v. Arizona Board of Regents,* 195 Ariz. 214, 986 P.2d 247 (1999), the Court found that the plaintiff was not a recreational user because the activity he engaged in (jumping on a trampoline) was not the kind of activity contemplated by the statute.

In the *Herman* case, the activity taking place on the land was held not to be a recreational activity because it had nothing to do with the specific list of activities set forth in the Recreational Use Statute. In addition, the plaintiff in that case entered the premises for the sole purpose of working at a concession. The *Herman* Court logically found that the plaintiff was not a recreational user for both these reasons.

In the case at bar, Jillian Relyea traveled to the campground with her parents and set up camp earlier in the day. She returned to the campground to retrieve personal belongings left at the camp. Jillian Relyea, a minor, traveled to the campground because that was where her family was camping and because she left personal belongings at the camp which she needed to retrieve. The activity that first brought Jillian Relyea to the forest land was camping. The activity that caused her to return to the forest was visiting the campsite. Obviously, the Recreational Use Statute applies to people using the roads to travel to and from their campsites. Jillian's presence on Forest Service Road No. 104 was directly related to camping activities.

If the Court were to construe the statute in the way argued by plaintiffs, activities directly related to and necessitated by hunting, fishing, trapping, camping, hiking, riding, exercising, swimming or similar pursuits would not be recreational uses. As pointed out by the defendant, if plaintiffs' position were correct, when a camper, hiker, hunter, fisherman, etc. inadvertently left a piece of personal property in the forest and returned to retrieve it, on the return trip that person would not be a recreational user. To construe the statute as narrowly as plaintiffs urge would completely undermine the purpose for the statute, i.e. to protect those who open their land to others for recreational use, without a fee, from liability based on ordinary negligence. *Mattice v. U.S. Department of Interior,* 969 F.2d 818, 821 (9th Cir.1992) (discussing California's Recreational Use Statute). On the other hand, to construe the statute as applying to everyone who enters the "premises" for whatever purpose is too broad. This Court reaches the conclusion that activities, such as retrieving property left at one's campsite, which are related to hunting, fishing, camping, hiking (as set forth in A.R.S. § 33–1551)

**1054**

are recreational uses within the statute and that Jillian Relyea was a recreational user.

Because there are no genuine issues of material fact precluding summary judgment and the Court finds that defendant is entitled to judgment as a matter of law, defendant's Motion for Summary Judgment is granted.

IT IS THEREFORE ORDERED granting defendant's Motion for Summary Judgment. (Doc. 28).

IT IS FURTHER ORDERED denying plaintiff's Motion for Summary Judgment. (Doc. 34).

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment for defendant.